[Docket No. 81]

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

| | |
|---|---|
| CHRISTOPHER SMALL,<br><br>  Plaintiff,<br><br>  v.<br><br>JOHN POWELL and MECHAEL CORTES,<br><br>  Defendants. | Civil No. 20-15082 (RMB-AMD)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

Plaintiff Christopher Small ("Plaintiff") was a prisoner at South Woods State Prison ("SWSP"). He filed this suit *pro se* against John Powell, former director of SWSP and Officer Mechael Cortes, a former correctional officer at SWSP (together, "Defendants") alleging that he was unlawfully denied access to the SWSP law library because he is African American. [Docket No. 81-8 ("SOMF") ¶ 1; Docket No. 1 ("Compl.") ¶¶ 12–15.] Because the record fails to establish that Defendants denied Plaintiff law library access because of his race, the Court will **GRANT** summary judgment to Defendants.

**I.    FACTUAL AND PROCEDURDAL BACKGROUND**

The law library at SWSP is subject to certain rules and procedures governed by the SWSP Inmate Handbook. [SOMF ¶ 14; Docket No. 81-2, Declaration of Jason S. Nunnermacker In Support of Defendants' Motion for Summary Judgment

("Nunnermacker Decl."), Ex. 2.] The law library is open Monday through Friday, except for holidays. [SOMF ¶ 17.] Prisoners must make appointments and receive approval from prison staff before using the library. [SOMF ¶¶ 18, 20.] No more than ten inmates are permitted to use the law library at a time and library access may be restricted based on staffing availability. [SOMF ¶¶ 16, 27.]

Upon his incarceration at SWSP in January 2020, Plaintiff regularly used the law library to work on the appeal of his state criminal conviction. [SOMF ¶¶ 20, 22.] In March 2020, the law library closed due to the COVID-19 pandemic. [SOMF ¶ 24.] When the library reopened in September 2020, Plaintiff once again began using the library. [SOMF ¶ 25.] Plaintiff testified at his deposition that he had requested and was approved for law library privileges on September 14, 2020 but was denied access. [SOMF ¶ 26 (citing Nunnermacker Decl., Ex. 1, Deposition of Christopher Small ("Small Depo.") at 32:18–36:9.] He testified that he did not remember why he was denied access on that day or who denied him access, but that he had no reason to believe that the denial was on account of his race. [*Id.*]

Plaintiff admits that other African American inmates also often used the law library. [SOMF ¶ 28.] Officer Cortez was frequently stationed at the law library between January and September of 2020. [SOMF ¶ 36.]

Plaintiff requested and received approval to access the law library on October 5, 2020. [SOMF ¶ 29.] But when he arrived at the library that morning, Officer Cortes denied him access without reason. [SOMF ¶ 29.] Plaintiff testified at his deposition that he was "not sure exactly why" Officer Cortes denied him library access but that

he "speculat[ed]" that it was because of his race. [SOMF ¶ 29 (quoting Small Depo. at 51:15–23).] Plaintiff admits that Officer Cortes made no reference to his race in denying him from the law library. [SOMF ¶ 40.][1]

Plaintiff's only other basis for believing that the denial was related to his race was that, while being turned away from the law library, he witnessed three or four other inmates of Hispanic descent using the library. [SOMF ¶ 32.] But Plaintiff admits that there were parts of the library that he could not see from his vantage point and that there might have been other prisoners, including of African American descent using the library. [SOMF ¶ 33.] Moreover, after he was denied access to the library on October 5, Officer Cortes repeatedly granted Plaintiff access to use the law library without issue. [SOMF ¶ 39.]

Plaintiff filed suit in this Court against the New Jersey Department of Corrections and its Commissioner as well as Director Powell and Officer Cortez seeking monetary and injunctive relief for state and federal access to courts violations as well as federal and state equal protection violations. [*See generally* Compl.] This Court screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the New Jersey Department of Corrections and its Commissioner as defendants as well as Plaintiff's state and federal access to courts claims. [*See generally* Docket No. 2; *Small v. New Jersey Dep't of Corr.*, 2021 WL 1382362 (D.N.J. Apr. 12, 2021).] But the Court

---

[1] Plaintiff alleged that Officer Cortes had used racial epithets and slurs against African American prisoners in the past, [Compl. ¶ 17], but there is no evidence in the record supporting those allegations.

permitted Plaintiff's state and federal equal protection claims to proceed past the screening stage against Officer Cortes and Director Powell.[2]

Defendants have moved for summary judgment. They argue that Plaintiff has failed to establish that Defendants denied him access to the law library because of his race in violation of his federal and state equal protection rights.[3] Plaintiff has not opposed the motion.[4]

## II. STANDARD OF REVIEW

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* at 250.

When deciding the existence of a genuine issue of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility

---

[2] The Court only permitted the equal protection claim to proceed against Director Powell for injunctive relief to end any ongoing equal protection violations.

[3] Defendants also argue, in the alternative, that Plaintiff failed to establish that he is entitled to monetary damages against Officer Cortes because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA") and that Plaintiff failed to establish a claim for injunctive relief against Director Powell because Director Powell is no longer stationed at SWSP and Plaintiff is no longer a prisoner at SWSP. [Docket No. 81-1 at 2.] The Court need not address these arguments because it finds that Plaintiff failed to establish an equal protection violation as a matter of law.

[4] The Court has nonetheless endeavored to assess the undisputed facts based on its independent review of the evidence. *See Ross-Tiggett v. Reed Smith LLP*, 2024 WL 1928176, at *3 (D.N.J. Apr. 30, 2024).

4

should be resolved against the moving party." *Meyer v. Riegel Products Corp.*, 720 F.2d 303, 307 n.2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine issue for trial. *Anderson*, 477 U.S. at 252. In the face of such evidence, summary judgment is still appropriate "[w]here the record ... could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a "fair-minded" jury could "reasonably" decide.'" *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting FED. R. CIV. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

## III. ANALYSIS

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (2) he was treated differently from similarly situated inmates. *See Williams v. Macut*, 677 F. App'x 40, 41 (3d Cir. 2017) (citing *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992)); *see also J.D. ex rel. Scipio-Derrick v. Davy*, 2 A.3d 387, 399–400 (N.J. App. Div. 2010) ("The equal protection provision in the New Jersey Constitution prohibits the State from adopting statutory classifications that treat similarly situated people differently.") (internal quotation marks and citation omitted).[5]

Plaintiff has failed to establish an equal protection violation. He admits that his allegation that Officer Cortes denied him access to the law library because of his race is pure "speculation." [SOMF ¶ 29] But "speculation and conjecture may not defeat a motion for summary judgment." *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 228 (3d Cir. 2009); *Bunting v. New Jersey Off. of the State Comptroller*, 2019 WL 4565232,

---

[5] The standards for establishing an equal protection violation under the New Jersey Constitution are functionally similar. *See Houston v. Township of Randolph*, 934 F. Supp. 2d 711, at 737 n.25 (D.N.J. Mar. 21, 2013) ("Analysis of equal protection claims brought under the New Jersey Constitution usually does not diverge from that under the federal Constitution."). The Court finds no persuasive reason to reach a different result in evaluating Plaintiff's state law equal protection claims.

at *8 (D.N.J. Sept. 20, 2019) ("[S]peculations are not sufficient to support the required inference of intentional discrimination.") (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)); *see also Bradshaw v. City of New York*, 2017 WL 6060781, at *14 (S.D.N.Y. Dec. 7, 2017) (granting summary judgment on equal protection claim because plaintiff's observation that defendant-officer acted "more immediately" for than African American prisoners was based on only conclusory speculation). There must be concrete evidence in the record to establish a genuine issue of material fact that Officer Cortes denied him access to the library because of Plaintiff's race. *See Orsatti*, 71 F.3d at 484.

There is no such evidence in the record. Casting away Plaintiff's speculation, he is left only with the fact that, on the morning Officer Cortes denied him access to the library, he witnessed three or four other non-African American inmates using the library. [SOMF ¶ 32.] But as Plaintiff admits, African American prisoners, (including Plaintiff) regularly used the law library, including at the discretion and supervision of Officer Cortes. [SOMF ¶ 32.] And Plaintiff continued to use the law library under the supervision of Officer Cortes after October 5. [SOMF ¶ 32.][6] Plaintiff's repeated use of the law library both before and after October 5 dispels any evidence of a discriminatory purpose to sustain an equal protection claim. *Vill. of Arlington Heights*, 429 U.S. at 266 ("Determining whether invidious discriminatory purpose was a motivating factor

---

[6] Moreover, Plaintiff admits that he is unsure whether there were any African American prisoners using the library on the morning of October 5. He could not see the entire library from his vantage point. [SOMF ¶ 33.]

demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.").

It is "hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened because the person is a member of that racial group." *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (emphasis removed). There is no evidence in the record to substantiate Plaintiff's equal protection claims that he was denied access to the law library because of his race. Accordingly, Plaintiff's equal protections claims under both state and federal law fail.[7]

## IV.   CONCLUSION

The Court will **GRANT** summary judgment and **DISMISS** the Complaint. An appropriate Order follows.

**December 19, 2024**                             **s/Renée Marie Bumb**
Date                                              RENÉE MARIE BUMB
                                                  Chief United States District Judge

---

[7] Because the Court finds no underlying equal protection violation against Defendant Cortes, the equal protection claims against Director Powell likewise must fail since there is no constitutional violation that can be remedied through an injunction.

8